FILED
SUPERIOR COURT
OF GUAM

2023 MAY -4 PM 2:31

CLERK OF COURT

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| GUAM HOUSING AND URBAN RENEWAL AUTHORITY; & DEPARTMENT OF PUBLIC HEALTH AND SOCIAL SERVICES,<br><br>Plaintiffs,<br><br>v.<br><br>REX INTERNATIONAL, INC.; & FIRST NET INSURANCE COMPANY; & DOES 1-30,<br>Defendants. | Civil Case No. CV0844-20<br><br>**DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STATUTE OF LIMITATIONS** |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on February 6, 2023 for hearing on Defendant First Net Insurance Company's ("First Net's") Motion for Partial Summary Judgment Re: Statute of Limitations ("Motion"). Attorney Thomas M. Tarpley Jr. represents First Net. Attorney Philip Torres represents Rex International, Inc. ("Rex International") but was not present. Assistant Attorney General Yusuke Haffeman-Udagawa represents Guam Housing and Urban Renewal Authority and the Department of Public Health and Social Services (collectively the "Plaintiffs"). Having duly considered the parties' briefs, oral arguments, and the applicable law, the Court now issues the following Decision and Order and **GRANTS** First Net's Motion.

## BACKGROUND

On November 20, 2013, the Plaintiffs and Rex International entered into a contract in which Rex International was to construct a Guam Environmental Public Health Laboratory, for use investigating mosquito disease outbreaks (the "Mosquito Lab Facility"). See Complaint at 4 (Nov. 13, 2020).

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 1 of 8

First Net issued a Performance and Payment Bond, subjecting First Net to a penal amount of $2,178,200 should Rex International fail to perform the contract. See Declaration of Counsel in Support of Motion (Ex. A) (May 18, 2022). First Net's obligations under the Performance and Payment Bond lasted until Rex International "perform and complete all work required for" the contract. Id. This includes delivery of said fully completed work "without further cost, expense or charge to the" Plaintiffs, "free and harmless from all suits or actions…which may be brought for or on account of… the neglect of… Rex International." Id.

Construction of the Mosquito Lab Facility began in 2014 and ended in early 2016. See Declaration of Counsel in Support of Motion (Ex. B) (May 18, 2022). On March 10, 2016, a ribbon-cutting ceremony was held. Id. On March 29, 2016, an Occupancy Permit was issued by the Department of Public Works, indicating that construction had finished and that the facility complied with Guam's various codes and regulations concerning building structure and use. See Declaration of Counsel in Support of Motion (Ex. E) (May 18, 2022).

However, Plaintiffs refused to accept the Mosquito Lab Facility, asserting that it failed to meet several requirements specified in the contract. See Complaint at 6-8 (Nov. 13, 2020). Plaintiffs spent the next two years working alongside Rex International to identify and cure the alleged defects, but to no avail. Id. at 6-7. Plaintiffs refused to occupy the building for much of that time, and only began occupation on June 2, 2017, conditional that said occupancy was not acceptance of the facility. See Declaration of Counsel in Support of Motion (Ex. B) (May 18, 2022).

Plaintiffs informed First Net of Rex International's alleged nonperformance in February, 2018. See Declaration of Counsel in Support of Motion (Ex. C) (May 18, 2022). On March 29, 2018, Plaintiffs issued a Notice of Default of the Contract to Rex International, giving them a deadline to cure by April 27, 2018. See Complaint at 7 (Nov. 13, 2020). Rex International did not cure the problems, and Plaintiffs eventually terminated the contract on May 3, 2018. Id. at 7.

On November 13, 2020, the Plaintiffs brought suit against Rex International for breach of contract. Id. at 1. The Plaintiffs also filed suit against First Net concerning First Net's failure to pay out the Performance and Payment Bond. Id. at 12-14. Plaintiffs claimed $2,178,200 in damages against First Net, the full penal amount under the Performance and Payment Bond. Id. at 14.

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page **2** of **8**

On May 18, 2022, First Net filed their Motion for Partial Summary Judgment Re: Statute of Limitations. Seeking to dismiss Plaintiffs' claims against them, First Net asserts the claims are barred by the statute of limitations, which they believe started running on March 29, 2016, the date the Occupancy Permit was issued. See Motion at 5-7 (May 18, 2022).

On June 16, 2022, Plaintiffs filed their Opposition to Motion ("Opposition"). Plaintiffs claim the statute of limitations began to run on March 29, 2018, when Plaintiffs issued a Notice of Default on the Contract to Rex International. See Opposition at 3 (Jun. 16, 2022). Alternatively, if the Court finds the statute of limitations started running in March 2016, Plaintiffs believe First Net should be equitably estopped from bringing their Motion because First Net persuaded them to forego bringing suit in a timely manner. Id. at 17-19.

On June 27, 2022, First Net filed their Reply to Plaintiffs' Opposition ("Reply"). First Net reiterated that their surety liability accrued on March 29, 2016 because that was when Rex International delivered the completed Mosquito Lab Facility to the Plaintiffs in a defective condition that Plaintiffs knew about, which First Net guaranteed against in the Performance and Payment Bond. See Reply at 3-5 (Jun. 27, 2022). First Net also denies ever inducing Plaintiffs into not filing suit. Id. at 5-6.

The Court held a hearing on February 6, 2023. After hearing the arguments of the parties, the Court took the matter under advisement.

## DISCUSSION

### I. Preliminary Rules:

#### a. Standard for Summary Judgment:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See *Hawaiian Rock Products Corp. v. Ocean Housing, Inc.*, 2016 Guam 4 ¶ 26 (quoting Guam R. Civ. P. 56(c)) (internal quotations omitted). "Genuine issues" are factual disputes requiring resolution by a fact-finder. See *Hayle v. Hemlani*, 2000 Guam 25 ¶ 20. "Material facts" are those "relevant to an element of

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 3 of 8

a claim or defense and whose existence might affect the outcome of the suit." Id. at ¶ 20.

The court "must view the evidence and draw inferences in the light most favorable to the non-movant." Id. at ¶ 21 (internal citation omitted). "If the movant can demonstrate there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." Id. at ¶ 21 (internal citation omitted).

### b. Statute of limitations is four (4) years.

"Any action upon any contract, obligation or liability founded upon an instrument in writing" must commence within four (4) years from the accrual of said cause of action. See 7 G.C.A. § 11303.

### c. Statute of limitations against First Net started running upon Rex International's breach.

An obligee's cause of action against their obligor's surety accrues at the same time as the cause of action against the principal obligor. See 72 C.J.S. Principal and Surety § 85. In other words, once a claim for breach of contract accrued against the principal, both the principal (Rex International) and the surety (First Net) are immediately liable.

## II. Plaintiffs' claim against First Net accrued on March 29, 2016 because Plaintiffs discovered the cause for a breach of the Performance and Payment Bond by that date.

The statute of limitations starts running once "a cause of action accrues." See *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wash.2d 566, 575 (2006). A "cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action." Id. at 575-576 (internal citations omitted). This discovery standard prevents unjust situations where a plaintiff is initially unaware of harm sustained from a wrongful act, and only discovers their cause of action after the statute of limitations has otherwise passed. Id. at 575-576.

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 4 of 8

"The liability for... any consequent breach of contract, is determined after... the construction project has been completed." See *Carl E. Woodward, L.L.C. v. Acceptance Idem. Ins. Co.*, 743 F.3d 91, 101 (5th Cir. 2014). Construction projects are completed at "the point in time when" the plaintiff "received the completed building." Id. at 101. Liability cannot arise out of "ongoing" construction projects because (1) builders "might correct the problem before completing the project", and (2) this would impose obligations on owners to monitor construction sites at all times for any minor defect that might trigger the statute of limitations. Id. at 101.

Here, all facts indicate that the Mosquito Lab Facility was fully constructed and delivered to the Plaintiffs by March 29, 2016. It was on that date that an Occupancy Permit was issued by the Department of Public Works, indicating that construction was "finished". See Declaration of Counsel in Support of Motion (Ex. E) (May 18, 2022). The Plaintiffs' words and actions also suggest that construction had finished by March 29, 2016. The Plaintiffs hosted a ribbon-cutting ceremony just weeks prior, celebrating the building's inauguration. See Declaration of Counsel in Support of Motion (Ex. B) (May 18, 2022). The Plaintiffs even admit several times that "the construction of" the Mosquito Lab Facility "was completed in early 2016". See Declaration of Counsel in Support of Motion (Ex. B) (May 18, 2022); See also Declaration of Counsel in Support of Plaintiffs' Opposition to FirstNet's Motion for Partial Summary Judgment Re: Damages (Ex. B) (Jun. 15, 2022). The Mosquito Lab Facility was also delivered on that date, as the Plaintiffs were immediately allowed to occupy the building from that point forward. See Declaration of Counsel in Support of Motion (Ex. E) (May 18, 2022).

While Rex International continued to perform subsequent work on the Mosquito Lab Facility in the following months and years, such work functioned to remedy the complained of defects rather than complete the initial construction or delivery of the building itself. For purposes of the Performance and Payment Bond, Rex International substantially completed, constructed, and delivered the Mosquito Lab Facility to the Plaintiffs by March 29, 2016.

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 5 of 8

Furthermore, all facts indicate that the Plaintiffs discovered the notable facts underlying the elements of their claim against First Net by March 29, 2016. By the Plaintiffs' own admission, "on the day of the (March 10, 2016 ribbon-cutting) celebration, it was noted that parts of the building, particularly the training room, were not being adequately cooled." See Declaration of Counsel in Support of Motion (Ex. B) (May 18, 2022); See also Declaration of Counsel in Support of Plaintiffs' Opposition to FirstNet's Motion for Partial Summary Judgment Re: Damages (Ex. B) (Jun. 15, 2022). Plaintiffs further admit their knowledge of several other serious defects indicating a breach before November 13, 2016 (four years prior to filing suit). For example, James Gillan, the Director of the Department of Public Health and Social Services, divulged their knowledge of several defects indicating a breach in a communication dated September 2016. See Declaration of Counsel in Support of Plaintiffs' Opposition to FirstNet's Motion for Partial Summary Judgment Re: Damages (Ex. I) (Jun. 15, 2022). These defects include, among others, "the absence of required visual and audible alarms", "improperly based" BSC cabinets, and doors improperly containing "child-lock type features". Id.

First Net has conclusively proven that the Mosquito Lab Facility was constructed and delivered to the Plaintiffs by March 29, 2016. On that date, the Plaintiffs discovered the elements of their claim against First Net, because they were aware that the completed Mosquito Lab Facility did not comply with the contract's specifications. Therefore, the statute of limitations began to run on March 29, 2016.

III. **Plaintiffs' filing was not within the statute of limitations because it was more than four years after their claim accrued.**

As explained above, the statute of limitations for Plaintiffs' claim against First Net started running on March 29, 2016. However, Plaintiffs did not bring suit against First Net until November 13, 2020. See Complaint (Nov. 13, 2020). The Plaintiffs had four years to investigate problems, work out disputes, and ultimately file their complaint. The Plaintiffs failed to do so within the appropriate time, and are now barred by the statute of limitations.

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 6 of 8

**IV. Equitable estoppel does not prevent First Net from asserting their statute of limitations defense because First Net never induced the Plaintiffs into forbearance of their lawsuit.**

Plaintiffs believe that First Net should be equitably estopped from asserting their statute of limitations defense because First Net repeatedly assured Plaintiffs that the Performance and Payment Bond would be honored, leading to their delayed filing. See Opposition at 17-19 (Jun. 16, 2022).

Guam recognizes the use of equitable estoppel in the context of a statute of limitations defense. *Limtiaco v. Guam Fire Dept.*, 2007 Guam 10 ¶ 57. The claimant must prove the following elements in an equitable estoppel analysis:

> (1) The party to be estopped must be apprised of the facts;
> (2) He must intend that his conduct will be acted upon, or in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon;
> (3) The party asserting the estoppel must be ignorant of the true state of the facts; and
> (4) He must rely upon the conduct to his injury.

Id. at ¶ 58.

Applying these elements to the present case, First Net was apprised of the fact that Rex International defaulted on the contract on May 3, 2018 (five days after the default and termination were effective). See Declaration of Counsel in Support of Plaintiffs' Opposition to FirstNet's Motion for Partial Summary Judgment Re: Damages (Ex. F) (Jun. 15, 2022).

The second inquiry is whether Plaintiffs could have reasonably relied on First Net's representations that First Net would remedy any outstanding issues in the Mosquito Lab Facility, and were ignorant of the fact that such remedies would not substantialize. It is true that First Net promised Plaintiffs that they would have Rex International remedy the HVAC commissioning problem. See Declaration of Counsel in Support of Plaintiffs' Opposition to FirstNet's Motion for Partial Summary Judgment Re: Damages (Ex. H) (Jun. 15, 2022). However, on September 24, 2018, First Net clearly disputed any obligation to remedy other

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page 7 of 8

grievances such as the BSC cabinets and the fume hoods. Id. On January 24, 2019, First Net further challenged both the scope of their obligations as well as whether they even fell within the warranty period. Id. These disputes were not a one-off conversation, and a September 19, 2019 email highlights how this remained a talking point between the parties well over a year after First Net was notified of Rex International's default. Id.

Therefore, it was not reasonable for Plaintiffs to rely on any perceived representations that First Net would remedy all outstanding deficiencies in the Mosquito Lab Facility. Plaintiffs had no reason to believe that First Net was ever going to remedy several key deficiencies absent a court-ordered judgment. In fact, Plaintiffs were repeatedly notified that First Net was not going to undertake such actions. Plaintiffs have failed to prove that First Net induced them into forbearing the bringing of their lawsuit, and equitable estoppel does not prevent First Net's statute of limitations defense.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** First Net's Motion. The statute of limitations for Plaintiffs' claim against First Net started running on March 29, 2016. Because the Plaintiffs filed suit against First Net after the four-year statute of limitations expired, and were not improperly induced by First Net to forgo bringing suit, their claim against First Net is now time-barred.

**IT IS SO ORDERED** this  May 4, 2023



_____
**HONORABLE ALBERTO C. LAMORENA, III**
**Presiding Judge, Superior Court of Guam**

Decision and Order Granting Defendant's Motion for Partial Summary Judgment Re: Statute of Limitations
CV0844-20, *Guam Housing and Urban Renewal Authority, et. al. v. Rex International, Inc. et. al.*
Page **8** of **8**